```
              IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF ARKANSAS
                      FAYETTEVILLE DIVISION

DANANAI A. McCARTHY                                      PLAINTIFF

VS.                         CASE NO. 06-5150

CAPTAIN PETRAY, LT. CARTER,
SHERIFF FERGUSON, and NURSE
SUE McDONALD                                            DEFENDANTS
```

### MEMORANDUM OPINION AND ORDER

Now on this 17th day of January, 2008, comes on to be considered **Defendants' Motion for Summary Judgment (Doc. 86)**. The Court, being well and sufficiently advised, concludes that the defendants' motion should be **GRANTED**. The Court finds and orders as follows with respect thereto:

**BACKGROUND**

1. The plaintiff, Dananai McCarthy, brings this action pro se alleging that his wife was denied proper medical care while detained in the Benton County Detention Center (hereinafter "BCDC"). Plaintiff names following Benton County officials as defendants: Sheriff Ferguson, Captain Petray, Lieutenant Carter, and Nurse Sue McDonald.[1] While plaintiff does not identify the basis for this Court's jurisdiction, the Court presumes that

---

[1] Plaintiff named a multitude of other defendants as well, but the Court previously granted their motions to dismiss and dismissed all but the remaining four defendants from this action. (Docs. 67-78.)

plaintiff's claims against these defendants arise under 42 U.S.C. § 1983.

2.   The defendants move for summary judgment. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  The Court considers the facts, and the inferences to be drawn from them, in the light most favorable to the nonmoving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

3.   In support of their motion, the defendants submit Mrs. McCarthy's jail records, hospital records, and other medical records, from which the following facts are made to appear:

*   Mrs. McCarthy entered the BCDC on February 2, 2005.  On her intake form, the only medical conditions Mrs. McCarthy reported were that she had chronic asthma and had only one kidney.  (Doc. 88 Ex. 1 at pg. 4.)

*   On February 3, 2005, Dr. Neal Mullins examined Mrs. McCarthy and continued her on an Albuterol inhaler, noting:

> She weighs #370 pounds.
>
> Examination of her lungs is as follows - I have very little if any spasm present.  There is slightly decreased auscultation but fairly good lung fields otherwise.  She has symptoms more of like a [COPD]....

Dr. Mullins' assessment was that Mrs. McCarthy suffered from "[s]ome COPD" and "[s]evere exogenous obesity."  (Id. at pg. 6.)

\*   On February 15, 2005, Nurse McDonald noted that Mrs. McCarthy had refused her Albuterol inhaler since February 3, 2005, and the inhaler was discontinued.  (Id. at pg. 11.)

\*   On February 22, 2005, Mrs. McCarthy refused to see the nurse.  (Id.)

\*   On May 11, 2005, Nurse McDonald noted that Mrs. McCarthy's feet were edematous and tender to touch.  Mrs. McCarthy was given Ibuprofen for pain in her feet.  (Id.)

\*   On June 7, 2005, Dr. Mullins examined Mrs. McCarthy for complaints of knee pain.  At that time, Mrs. McCarthy weighed 328 pounds.  Dr. Mullins' assessment was "possibly some rheumatoid arthritis of her knees," and he continued her on Ibuprofen.  (Id. at pg. 7.)

\*   As of July 14, 2005, Mrs. McCarthy's weight had dropped to 308 pounds.  On that date, Nurse McDonald prescribed Mrs. McCarthy acetaminophen at night for leg pain.  (Id. at pg. 11.)

\*   On November 2, 2005, Mrs. McCarthy was prescribed antibiotics for an ear infection.  (Id.)

\*   On November 9, 2005, Dr. Mullins saw Mrs. McCarthy for complaints that she had an earache and had been spitting up blood.  Dr. Mullins observed that Mrs. McCarthy's ear infection had resolved and that she had "just a little red streak from spitting up."  Dr. Mullins noted, "I explained to her that any time she has a little coughing, she may have a little superficial blood vessel.

It's certainly no heavy bleeding there." Mrs. McCarthy's weight on this date had dropped to 266 pounds, over 100 pounds less than when she entered the jail nine months prior.  (Id. at pg. 8.)

* At approximately 6:00 p.m. on November 18, 2005, Sergeant Faulkenbury was summoned to Mrs. McCarthy's cell for medical assistance.  Mrs. McCarthy complained that she had no feeling on the right side of her body and Sergeant Faulkenbury noticed that the right side of Mrs. McCarthy's mouth "was moving very little, and her right eye seemed to be squinting."  Sergeant Faulkenbury telephoned Nurse McDonald and informed her of the situation.  Nurse McDonald advised Sergeant Faulkenbury to give Mrs. McCarthy some Ibuprofen and let her have bed rest.  Sergeant Faulkenbury instructed the deputy on duty to give Mrs. McCarthy the Ibuprofen and to keep an eye on her throughout the night.  (Id. at pg. 9.)

* Mrs. McCarthy was transported to St. Mary's Hospital the following morning at approximately 7:45 a.m.  Dr. Cynthia Wilson examined Mrs. McCarthy and reported:

> The patient is a 52-year old African-American female resident of Benton County Jail since February.  She states yesterday she started to have some pain in her right arm.  She decided to go to bed and during the night continued to have some pain and was given some [I]buprofen. When she awoke this morning, she had right-sided paralysis and left facial drooping and slurred speech....  She has had a two-week history of bloody sputum and was treated for a right ear infection....  She thinks she has had fever although we have none documented; otherwise, she also has had a 100-pound weight loss since being placed in Benton County Jail in February.  The officer who is with her states that is not unusual.  She was placed on a 2200-calorie diet and he

>   states that it is not unusual for obese people to have weight loss....
>
>   Portable chest x-ray shows a right-sided infiltrate....
>
>   Diagnosis(es)[:]
>
>   1.   ... [R]ight-sided paralysis and left facial drooping, consistent with a cerebrovascular accident ...
>
>   2.   One hundred pound weight loss, blood in sputum, right-sided infiltrate, previous smoking history.  Would worry about aspiration but also worry about TB or even carcinoma.

(Doc. 88 Ex. 2 at pgs. 16-17.)

   *   A biopsy of Mrs. McCarthy's right lung performed on November 23, 2005, revealed non-small cell carcinoma of the right upper lobe.  (Id. at pg. 25.)

   *   On December 6, 2005, Dr. Malcolm Hayward provided an oncology consultation and opined that Mrs. McCarthy was "very unlikely to be curable and that her life expectancy is likely to be less than a year."  (Id. at pgs. 31-32.)

   *   On December 13, 2005, Mrs. McCarthy was discharged from St. Mary's Hospital to Windcrest Rehabilitation Center.  (Id. at pg. 33.)  On this same date, Mrs. McCarthy was given "time served" on the criminal charges pending against her and was released from BCDC custody.

   *   On December 22, 2005, Mrs. McCarthy was transported from Windcrest Rehabilitation Center to the emergency room due to a deterioration in her condition.  (Doc. 88 Ex. 3 at pg. 16.)

\*     Mrs. McCarthy passed away on December 26, 2005.  The cause of death was identified as "hem/onc disease." (Doc. 88 Ex. 4 at pg. 9.)

4.    Plaintiff does not dispute the above facts but asserts that the issue is "who knew" that Mrs. McCarthy had cancer and "when." (Doc. 89 at pg. 7.)  According to plaintiff, Mrs. McCarthy was an "e[]scapee from the Wisconsin Department of Corrections ... [and] [s]he walked away after learning of her cancer."  Plaintiff states, "I believe that the Wisconsin Department of Corrections informed ... Captain Petray and Dr. Mullins of [Mrs. McCarthy's] medical condition."  (Id. at pg. 3.)  Plaintiff acknowledges that his wife did not disclose to him that she had cancer and that he did not learn of the fact until after her death.

**DISCUSSION**

5.    Defendants argue that they are entitled to summary judgment because, inter alia, plaintiff has not alleged that they were personally involved in the alleged denial of proper medical care to his wife.  Defendants alternatively argue that plaintiff has failed to demonstrate any deliberate indifference to his wife's medical needs.

6.    The Court's review of Mrs. McCarthy's jail records and medical records reveals no involvement by Lieutenant Carter or Sheriff Ferguson in Mrs. McCarthy's medical care.  Absent any personal involvement by these defendants, there is no basis for

liability against them in their individual capacities.  See Spann v. Roper, 453 F.3d 1007, 1009 (8th Cir. 2006).  Likewise, there is no basis for liability against these defendants in their official capacities, as plaintiff has not identified any policy or custom of the BCDC that resulted in the alleged denial of medical care.  See Grayson v. Ross, 454 F.3d 802, 810-811 (8th Cir. 2006).

7. With regard to the remaining two defendants – Nurse McDonald and Captain Petray – Nurse McDonald was involved in Mrs. McCarthy's medical care and plaintiff states that he "believe[s]" the Wisconsin Department of Corrections informed Captain Petray and the jail doctor that Mrs. McCarthy had cancer.

To succeed on his claim against Nurse McDonald and Captain Petray, plaintiff must show (1) that Mrs. McCarthy had an objectively serious medical need; and (2) that Nurse McDonald and Captain Petray actually knew of the medical need but were deliberately indifferent to it.  See Jones v. Minnesota Dept. of Corrections, 2008 W.L. 80576, *3 (8th Cir. Jan. 9, 2008).

8. An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a "'layperson would easily recognize the necessity for a doctor's attention.'" Id. (internal citations omitted).  To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk; rather, a plaintiff must demonstrate that the official actually

knew of the risk and deliberately disregarded it. Id. The determination that jail officials had actual knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the risk was obvious. Id. However, a showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions. Id.

    9. Plaintiff's unsupported belief that the Wisconsin Department of Corrections informed Captain Petray and the jail doctor that Mrs. McCarthy had cancer is insufficient to establish a jury question as to whether Nurse McDonald and Captain Petray actually knew of Mrs. McCarthy's condition. See Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (party seeking to defeat summary judgment must substantiate allegations with sufficient probative evidence to permit finding in his favor based on more than speculation or conjecture).

    10. The jail records indicate that the only significant symptom Mrs. McCarthy had from February 2005 to November 2005, was a weight loss of approximately 100 pounds. However, given that Mrs. McCarthy was obese when she entered the jail, that she had been placed on a 2200-calorie diet, and that she still weighed over 260 pounds, the weight loss cannot be said to have put defendants on notice that Mrs. McCarthy had some sort of serious medical need.

    11. On November 9, 2005, Mrs. McCarthy complained that she had been spitting up blood. This incident cannot be said to have

demonstrated that Mrs. McCarthy had an obvious serious medical need, as the jail doctor attributed the bleeding to the superficial breakage of a blood vessel caused by coughing and noted that it was "just a little red streak" and not "heavy bleeding."

12. The first occasion when Mrs. McCarthy can be said to have demonstrated an obvious serious medical need was on the evening of November 18, 2005, when she complained that she had no feeling on her right side. While jail officials delayed in transporting Mrs. McCarthy to the hospital until the following morning, she was given Ibuprofen and placed under observation throughout the night. Further, there is no indication that Mrs. McCarthy's condition was acute or escalating at that juncture or that the delay in transporting her to the hospital adversely affected her prognosis. The delay in taking Mrs. McCarthy to the hospital is, therefore, not actionable. See Scherrer v. Stephens, 50 F.3d 496, 497 (8th Cir. 1994) (per curiam) (no liability for delay in medical treatment unless defendant ignored acute or escalating situation or the delay adversely affected prognosis).

13. Tests performed at the hospital revealed that Mrs. McCarthy had suffered a stroke and that she had lung cancer. Unfortunately, Mrs. McCarthy's condition was terminal by that point. According to plaintiff, Mrs. McCarthy was aware that she had cancer and that is why she "walked away" from the Wisconsin Department of Corrections. Plaintiff acknowledges that his wife

never disclosed her illness to him and there is no evidence that she disclosed it to any officials of the BCDC.  While the Court certainly sympathizes with the plaintiff in the loss of his wife, there is no evidence indicating that defendants were otherwise put on notice of Mrs. McCarthy's condition or that they deliberately disregarded it.  Plaintiff, therefore, has failed to demonstrate any actionable deliberate indifference to Mrs. McCarthy's medical needs.

**CONCLUSION**

14.  Based on the foregoing, the Court finds that Defendants' **Motion for Summary Judgment (Doc. 86)** should be and hereby is **GRANTED**.  Accordingly, plaintiff's claims against Captain Petray, Lieutenant Carter, Sheriff Ferguson, and Nurse McDonald (the only defendants remaining in this action) are hereby **DISMISSED WITH PREJUDICE.**

IT IS SO ORDERED.

/S/JIMM LARRY HENDREN
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE